ZIMMERMAN REED, LLP
CHRISTOPHER P. RIDOUT (SBN 143931)
 Email: christopher.ridout@zimmreed.com
HANNAH P. BELKNAP (SBN 294155)
 Email: hannah.belknap@zimmreed.com
2381 Rosecrans Ave., Suite 328
Manhattan Beach, CA 90245
(877) 500-8780 Telephone
(877) 500-8781 Facsimile

*Local Counsel for Plaintiff*

(Trial Counsel Listed On Signature Page)

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA
## EASTERN DIVISION (RIVERSIDE)

| | |
|---|---|
| CHRISTOPHER AGRELLA, individually and on behalf of all similarly situated individuals, | Case No.: 5:17-CV-00689 |
| Plaintiff, | COLLECTIVE/CLASS ACTION COMPLAINT AND JURY DEMAND |
| v. | |
| ORANGE COUNTY COURIER & LOGISTICS, LLLP and SUBCONTRACTING CONCEPTS, LLC., | |
| Defendants, | |

Christopher Agrella ("Plaintiff"), by and through his undersigned attorneys, hereby bring this Collective/Class Action Complaint against Orange County Courier & Logistics, LLLP ("OCCL" or "Defendants") and Subcontracting Concepts, LLC ("SCI" or "Defendants") state as follows:

## INTRODUCTION

1.     This is a collective action brought by Plaintiff on his own behalf and on

behalf of all similarly situated current and former courier drivers of Defendants to recover for Defendants' willful violation of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201, *et seq.*, the California Labor Code §§ 226, 510, 1194, and 2802 the California Industrial Welfare Commission Wage Order No. 9 ("ICW Wage Order 9"), the California Business & Professional Code § 17200, *et seq.*, California common law as a state-wide class action pursuant to Fed. R. Civ. P. 23, and other appropriate rules, regulations, statutes, and ordinances.

2.     Plaintiff was subjected to Defendants' policy and practice of failing to pay overtime at a rate of one and one-half times his regular rates of pay for hours worked in excess of 40 hours during a workweek or 8 hours during a workday.

3.     Specifically, Plaintiff complains that Defendants misclassified Plaintiff and all other members of the Class as independent contractors, as opposed to employees, at all times in which they worked as courier drivers for Defendants. Defendants failed to pay Plaintiff overtime benefits that he was entitled to under applicable federal and state laws. Defendants failed to provide the meal breaks and rest periods they were entitled to under applicable federal and state law. Defendants failed to provide proper reimbursement for all necessary expenditures, including, but not limited to mileage reimbursement, as required under state law and under IWC Wage Order No. 9. Defendants failed to furnish a statement itemizing, among other things, the total hours worked by the employee, as required under state law and under IWC Wage Order No. 9. To remedy these practices, Plaintiff brings this action as a nation-wide collective and class action pursuant to 29 U.S.C. § 216(b) and Fed. R. Civ. P. 23.

4.     The individuals that Plaintiff seeks to represent in this action are current and former courier drivers of Defendants, or other job titles performing similar job duties, who were improperly classified by Defendants as independent contractors. Defendants' improper classification resulted in the failure to properly compensate Plaintiff and other similarly situated courier drivers with overtime pay as required under applicable federal and state laws, as well as the meal break, rest periods, and

reimbursement for necessary expenditures.

5. Plaintiff seeks a declaration that his rights, and the rights of the Class, were violated, an award of unpaid wages, an award of liquidated damages, injunctive and declaratory relief, and award of attorneys' fees and costs to make them whole for damages they suffered, and to ensure that they and future workers will not be subjected by Defendants to such illegal conduct in the future.

## JURISDICTION AND VENUE

6. This Court has subject-matter jurisdiction over Plaintiff's FLSA claims pursuant to 28 U.S.C. § 1331 because Plaintiff's claims raise a federal question under 29 U.S.C. §§ 201, *et seq*.

7. This Court also has subject-matter jurisdiction over Plaintiff's Collective Action FLSA claim pursuant to 29 U.S.C. § 216(b), which provides that suit under the FLSA "may be maintained against any employer . . . in any Federal or State court of competent jurisdiction."

8. Upon information and belief, Defendants' annual sales exceed $500,000 and they have more than two employees, so the FLSA applies in this case on an enterprise basis. Defendants' employees engage in interstate commerce, and therefore, they are also covered by the FLSA on an individual basis.

9. This Court has supplemental jurisdiction over the California state law wage and hour class pursuant to 28 U.S.C. § 1367 because all California state law wage and hour claims are so related to the federal claims that "they form part of the same case or controversy" such that they should be adjudicated in one judicial proceeding.

10. This Court has personal jurisdiction over Defendants because they do business within the State of California and OCCL lists its service areas as California counties: Orange, Los Angeles, San Diego, Riverside, San Bernardino, Ventura, and Santa Barbara.[1]

11. Venue is proper in this District pursuant to 28 U.S.C. § 1391 because

---

[1] http://www.goorangecountycourier.com/ (last visited March 20, 2017).

Defendants conduct substantial business within this District and the actions and omissions giving rise to the claims pled in this Complaint substantially occurred in this District.

## **PARTIES**

12.     Plaintiff is an individual who resides in the County of Riverside, City of Mira Loma, California.   Plaintiff has worked for Defendants as a courier driver since approximately December 2014.  Plaintiff has executed his Consent to Sue, attached hereto as Exhibit A.

13.     Plaintiff and other similarly situated individuals are, or were, employed by Defendants as courier drivers or other job titles performing similar job duties.

14.     Defendant Orange County Courier & Logistics, LLLP is a Nevada limited-liability limited partnership, with its principal place of business located at 6261 Variel Avenue #A, Woodland Hills, California 91367.   OCCL lists its service areas as California counties: Orange, Los Angeles, San Diego, Riverside, San Bernardino, Ventura, and Santa Barbara.[2]  OCCL is the "recognized transport leaders in Southern California."[3]

15.     OCCL is registered with the California Secretary of State to do business in the State of California and can be served through its Agent for Service of Process, Romey J. Martin, located at 6261 Variel Avenue #A, Woodland Hills, California 91367.

16.     Defendant Subcontracting Concepts, LLC is a Delaware limited liability company, with its principal place of business located at 25 Willowbrook Road, Suite 2N, Queensbury, New York 12804.  SCI operates a logistical broker service that provides "owner/operator" courier drivers for its clients throughout the United States.[4]

17.     SCI is registered with the California Secretary of State to do business in the State of California and can be served through its Chief Executive Officer, Russell

---

[2] http://www.goorangecountycourier.com/ (last visited March 20, 2017).
[3] *Id.*
[4] https://www.scidriver.com/faqexternal.aspx (last visited March 20, 2017).

Reardon, located at 25 Willowbrook Road, Suite 2N, Queensbury, New York 12804.[5]

18. At all relevant times, OCCL and SCI were joint "employers" of Plaintiff within the meanings of 29 U.S.C. § 203(d) and the California Labor Code § 1194 as set forth in IWC Wage Order 9 § 2(G) and Plaintiff was Defendants' "employee" within the meanings of 29 U.S.C. § 203(e) and he California Labor Code § 1194 as set forth in IWC Wage Order 9 § 2(F).

19. Defendants were members of, and engaged in, a joint venture, partnership, and common enterprise, and were acting within the course and scope of, and in pursuance of said joint venture, partnership or common enterprise in employing Plaintiff and other similarly situated current and/or former courier drivers.

20. Plaintiff is informed and believes, and allege thereon, that at all relevant times, each of the Defendants, whether individual, partner, corporate, was and is responsible in some manner for the circumstances alleged herein, and proximately cause Plaintiff's and the similarly situated class, to be subject to the unlawful acts and practices complained of herein.

21. At all times relevant, Defendants, were members of, and engaged in, a joint venture, partnership, and common enterprise, and were acting within the course and scope of, an in pursuance of said joint venture, partnership or common enterprise.

## **GENERAL ALLEGATIONS**

### *A. Defendants Maintained Total Control Over All Aspects of their Courier Driver's Employment such that the Drivers Fail to Satisfy Any Test that they are, in Fact, Independent Contractors.*

22. Plaintiff and other similarly situated individuals were, or are, employed by Defendant as courier drivers or other job titles performing similar job duties.

23. Regardless of formal job title, Plaintiff and all other similarly situated employees' job duties included regularly contacting OCCL's dispatch, signing onto

---

[5] SCI lists on the California Secretary of State's website that its Agent for Service of Process is CT Corporation System (C0168406), but does not list an address for this Registered Agent. *See* State of California Secretary of State Business Entity Search Results and State of California Secretary of State Statement of Information Filing, attached hereto as Exhibit B.

OCCL's data tracking phone application program used for sending the delivery orders from OCCL to the courier drivers, driving courier vehicles to pick up and drop off various delivery packages, and performing other miscellaneous duties as directed by their OCCL supervisors and/or managers.

24. Defendants require their courier drivers to enter into an Owner/Operator Agreement ("Agreement"), which purports to describe the working relationship between Defendants and its courier drivers. *See, e.g.,* SCI Independent Contractor Cover Letter of the Agreement, attached hereto as Exhibit C.

25. Despite the purported Independent Contractor title, Defendants operate managerial control over all courier drivers.

26. Plaintiff was regularly scheduled by OCCL to work from 12:00 p.m. to 8:00 p.m., at least 5 days per week.

27. At the beginning of each shift, Plaintiff was required to call into OCCL's dispatch to begin his route. Alternatively, if Plaintiff was sick or having car trouble, he was required to call into OCCL's dispatch to let OCCL know he would not be delivering that day.

28. Following his phone call to OCCL dispatch, Plaintiff was then required to sign onto OCCL's data tracking phone application program to receive his delivery orders.

29. OCCL was in control of receiving courier orders from its customers/clients and then assigning the pick-ups and drop-offs to Defendants' courier drivers throughout their shifts. Plaintiff and other similarly situated courier drivers did not have a meaningful opportunity to bid for their routes.

30. The total number of deliveries and the route assigned to Plaintiff varied depending on the day. Some days, Defendants would have enough deliveries assigned to Plaintiff's route at the beginning of his shift to last, at the least, the entirety of his shift. Other days, Defendants would not have a full day of deliveries assigned to Plaintiff at the beginning of his shift, but would assign him on-demand pick-ups and

drop-offs throughout the day as to last, at the least, the entirety of his shift.

31.    Regardless of the amount of deliveries assigned to Plaintiff at the beginning of the day, either by original assignment or through on-demand deliveries required to be picked up and dropped off throughout the day, the route assignments that Defendants imposed on Plaintiff caused him to regularly work at least 9 hours per shift. *See, e.g.*, Plaintiff's Daily Log Sheets for 01/02/2015; 04/25/2015; and 05/21/2016, attached hereto as Exhibit D (noting delivery times listed as late as 23:44, 22:43, and 23:39).

32.    Because of the number of deliveries OCCL assigned to Plaintiff and the time constraints that these deliveries often had, Plaintiff was seldom able to take a 30-minute meal break during his shift. Plaintiff would regularly have approximately 10 uninterrupted minutes throughout his shift to attempt to eat something quickly or he would eat while performing his job of driving to and from pick-up and drop-off locations.

33.    Plaintiff occasionally worked some shifts in which, after he completed the pick-up and drop-offs assigned to him, he would have to wait for OCCL to assign another on-demand delivery to his route. However, during this time, Plaintiff was unable to utilize this time for his own purposes. Plaintiff was required to call into OCCL dispatch to alert them of where he was and that he had delivered his route. OCCL would instruct him to remain in his area because another order could be assigned to him in that area at any time during his scheduled shift.

34.    OCCL required Plaintiff to be available for on-demand pick-up and drop-offs at any time during his scheduled shift. Plaintiff was not allowed to decline receiving on-demand pick-up and drop-off notifications through OCCL's data track phone application while he was still scheduled to work. Additionally, Plaintiff would receive text messages from his manager, Joe, with on-demand pick-ups and drop-offs at any time during his scheduled shifts.

35.    The U.S. Department of Labor specifically recognizes that employees who are "engaged to wait" are "working" – for instance, "a fireman who plays checkers while

waiting for an alarm is working during such periods of inactivity". *See* DOL Fact Sheet #22, at 1, attached hereto at Exhibit E. Further, an employee who is required to remain "on call" but who doesn't have to stay on the employer's premises is "working" if "[a]dditional constraints on the employee's freedom" occurs. *Id.*

36. Because the route assignments that Defendants impose upon their courier drivers creates long 9 to 10 hour workdays, Plaintiff and other similarly situated courier drivers were prevented from working for other companies. *See, e.g.*, Exhibit D (noting although Plaintiff began his shift at 12:00 PM, he could not record his driving time until he arrived to the location of his first pick-up and his delivery times listed are as late as 23:44, 22:43, and 23:39).

37. Plaintiff was required to contact OCCL's dispatch throughout his shifts to check in about certain pick-ups or drop-offs. *See, e.g.,* Pick Ups & Deliveries, attached hereto as Exhibit F (noting "[w]hen the order is picked up . . . then call dispatch to confirm . . . driver(s) will then be given a directive to either STANDBY or TO GO DROP . . . [w]hen the order is dropped off . . . [c]heck in with dispatch for the next assignment"); LifeStream Memorandum, attached hereto as Exhibit G (noting "[o]nly dispatch can instruct you to take something back with an order . . . taking the empty cooler and/or anything back from the receiving party must be cleared by dispatch first and you must have an order for it sent to you); ESC-10 Frozen Specimen Container Memorandum, attached hereto as Exhibit H (noting "[a]sk for directions from dispatch to GO DROP or TO GO PICK SOMETHING ELSE").

38. Further, Defendants advertise their courier drivers are "[e]quipped with two-way radios for instant communication" and are "[t]racked by GPS to monitor each delivery."[6]

39. While on route, OCCL required Plaintiff to fill out a daily log sheet created by OCCL, recording each pick-up and drop-off Plaintiff made. He was required to submit the log sheets to OCCL in Woodland Hills, California. *See, e.g.*, Exhibit D.

---

[6] http://www.goorangecountycourier.com/ (last visited March 20, 2017).

40.     Plaintiff was required to wear the OCCL uniform and identification badge, as OCCL requires their courier drivers be "[p]rofessionally uniformed."[7]

41.     Upon information and belief, Defendants employed uniform pay practices whereby Plaintiff was paid a "route settlement" for each delivery location delivered to, irrespective of how many pieces were being delivered to each location. Plaintiff and other similarly situated courier drivers did not have a meaningful opportunity to negotiate the rate they would be paid for their routes. *See, e.g.*, Plaintiff's paystubs and corresponding settlement reports for pay period 12/30/2014 through 01/12/2015; 01/26/2016 through 02/08/2016; and 02/09/2016 through 02/22/2016, attached hereto as Exhibit I.

42.     Defendants deducted various SCI courier program fees from Plaintiff's paystubs each pay period. *See, e.g.*, Exhibit I (noting "SCI Program Fee(G)*" for $59.00 and "Uniform" for $19.00 was deducted for period ending 01/12/2015 and "SCI Program Fee (A) Courier*" for $59.00 was deducted for periods ending 02/08/2016 and 02/22/2016).

43.     Defendants also require their courier drivers to use their own vehicles to make deliveries and at an exact time unknown to Plaintiff, provided him with a list of expenses. *See* OCCL Expense List, attached hereto as Exhibit J (noting it lists vehicle insurance limit requirements, registration, cell phone, radio, tote bag, OCCL shirts, among other items). Further, OCCL advertises that their courier drivers are "[i]nsured and bonded."[8]

44.     OCCL advertises that their courier drivers are "[t]rained and compliant with all policies and procedures."[9] Following an interview with management at OCCL, Plaintiff was verbally instructed regarding OCCL's policies and procedures and was trained how everything worked. Additionally, Plaintiff's manager at OCCL, Joe, would regularly text Plaintiff and other similarly situated courier drivers reminders about

---

[7] *Id.*
[8] *Id.*
[9] *Id.*

OCCL policies and procedures as needed.

45. Throughout his time delivering with Defendants, but at exact dates unknown to Plaintiff, he was given various memoranda that detailed OCCL's expectations of its courier drivers. *See, e.g.,* Letter of Do's and Don'ts, attached hereto as Exhibit K (noting to all drivers that the do's and don'ts listed on the memorandum are "imperative and important"); Stat Protocol, attached hereto as Exhibit L (noting among other things, "courier is responsible for matching the name to the specimen and getting it to the lab within the distribution time frame . . . maintain communications [with dispatch] every 15 minutes until the specimen is dropped . . . you are required to call in the drop time immediately"); In Case of a Spill Diagram, attached hereto as Exhibit M; Labeling Memorandum, attached hereto as Exhibit N (noting all independent contractors are required to follow the label procedures); Exhibit F (noting the procedures required for pick up and deliveries); Exhibit G (noting the procedures to follow regarding a certain client); and Exhibit H (noting the procedures for frozen specimen pick-ups from a lock box).

**B. As Employees, Plaintiff and the Class are Entitled to the Protections of the Fair Labor Standards Act and the Applicable Sections of the California Labor Code.**

46. Defendants, in the past and currently, continue to misclassify their courier drivers as independent contractors and consider them to be exempt from the overtime requirements of the FLSA and the California Labor Code. Plaintiff and other similarly situated individuals employed by Defendant as courier drivers or other job titles performing similar job duties do not meet any of the exemptions set forth in the FLSA. Therefore, their jobs are, in fact and in law, non-exempt from the overtime provisions of the FLSA and the California Labor Code.

47. Throughout the course of Plaintiff's employment, Plaintiff was directed by Defendants to work in excess of 40 hours per week.

48. Defendants knew or should have known that, under the FLSA, Plaintiff and other similarly situated courier drivers should have been paid overtime "at a rate not less

than one and one-half times the regular rate" at which they were employed for all compensable time for workweeks in excess of forty (40) hours. 29 U.S.C. § 207(a)(1).

49. Defendants knew or should have known that under the California Labor Code, Plaintiff and other similarly situated courier drivers should have been paid overtime "at the rate of no less than one and one-half times" of the employee's regular wage rate for "[a]ny work in excess of eight hours in one workday and any work in excess of 40 hours in any one workweek." Cal. Lab. Code § 510(a).

50. Despite this, Defendants did not pay overtime at one and one-half times the regular rate for Plaintiff's hours worked in excess of eight hours in any one workday or for hours worked in excess of forty (40) in any one workweek.

51. Defendants willfully engaged in the policy and practice of not paying Plaintiff and other similarly situated courier drivers the premium overtime rate for hours worked in excess of 40 hours per workweek or hours worked in excess of 8 hours per work day.

52. Defendants knew or should have known that the Cal. Labor Code § 226(a) requires employers semi-monthly or at the time of each payment of wages to furnish each employee with a statement itemizing, among other things, the total hours worked by the employee.

53. Defendants knew or should have known that, every employer subject to any provision of the FLSA must maintain accurate timesheet and payroll records. *See* 29 C.F.R § 516.1. The employer is mandated to maintain and preserve payroll or other records containing, without limitation, the total hours worked by each employee each workday and total hours worked by each employee each workweek. 29 C.F.R § 516.2.

54. Despite that, Defendants failed to maintain and preserve accurate timesheet and payroll records as required by the Cal. Labor Code § 226 and 29 C.F.R § 516.2. *See, e.g.,* Exhibit I (noting that Plaintiffs' time performed in excess of 8 per workday and/or 40 per workweek has not been recorded or compensated at one and one-half Plaintiffs' regular rates of pay).

55. When the employer fails to keep accurate records of the hours worked by its employees, the rule in *Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680, 687-88, 66 S. Ct. 1187, 1192 (1946) is controlling. That rule states:

> [w]here the employer's records are inaccurate or inadequate . . . an employee has carried out his burden if he proves that he has in fact performed work for which he was improperly compensated and if he produces sufficient evidence to show the amount and extent of that work as a matter of just and reasonable inference. The burden then shifts to the employer to come forward with evidence of the precise amount of work performed or with evidence to negative the reasonableness of the inference to be drawn from the employee's evidence. If the employer fails to produce such evidence, the court may then award damages to the employee, even though the result be only approximate.

56. The Supreme Court set forth this test to avoid placing a premium on an employer's failure to keep proper records in conformity with its statutory duty, thereby allowing the employer to reap the benefits of the employees' labors without proper compensation as required by the FLSA. Where damages are awarded pursuant to this test, "[t]he employer cannot be heard to complain that the damages lack the exactness and precision of measurement that would be possible had he kept records in accordance with . . . the Act." *Id*.

57. In reckless disregard of the FLSA and the California Labor Code, Defendants adopted and then adhered to their policy and plan of employing Plaintiff and other similarly situated courier drivers to perform work in excess of 40 hours per workweek and/or work in excess of 8 hours per workday without premium overtime compensation in violation of the FLSA and the California Labor Code.

## COLLECTIVE ACTION ALLEGATIONS

58. Plaintiff brings this action pursuant to 29 U.S.C. § 216(b) of the FLSA individually and on behalf of:

> All current and former courier drivers, or other job titles performing similar job duties, of Orange County Courier & Logistics, LLLP ("OCCL") and Subcontracting Concepts, LLC ("SCI"), who signed an "Owner/Operator Agreement" and provided courier services to OCCL and SCI's clients at any time in the last three years and were not paid overtime premiums for hours worked over 40.

59.    Plaintiff does not bring this action on behalf of any executive, administrative, or professional employees exempt from coverage under the FLSA or for those employees who were paid at the proper legal rate for each hour worked.

60.    Plaintiff and the putative conditional class are not exempt under the Motor Carrier Act, 49 U.S.C. § 10101, *et seq*., for reasons that include, but are not limited to, the fact that Plaintiff and the putative conditional class drive their own vehicles (passenger cars) that weigh less than 10,000 pounds and do not cross state lines.

61.    *29 U.S.C. § 216(b) Conditional Certification "Similarly Situated" Standard*:    With respect to the claims set forth in the FLSA action, conditional certification under the FLSA is appropriate because the employees described above are "similarly situated" to Plaintiff under 29 U.S.C. § 216(b).   The class of employees on behalf of whom Plaintiff brings this collective action are similarly situated because: (a) they have been or are employed in the same or similar positions; (b) they were or are subject to the same or similar unlawful practices, policy, or plan (namely, Defendants' misclassifying Plaintiff and the putative conditional class as Independent Contractors and not paying Plaintiff and the putative conditional class overtime at a rate of one-and-one-half times their regular rates); (c) their claims are based upon the same factual and legal theories; and (d) the employment relationship between Defendants and every putative Class member is exactly the same and differs only by name, location, and rate of pay.

62.    Upon information and belief, there are numerous other similarly situated current and former courier drivers or other job titles performing similar job duties who were misclassified as Independent Contractors and performed uncompensated overtime hours in violation of FLSA and would benefit from the issuance of a court-supervised notice of this action and the opportunity to join it.   The precise number of collective Class members should be readily available from a review of Defendants' personnel, scheduling, time and payroll records, and from input received from the collective class members as part of the notice and "opt-in" process provided by 29 U.S.C. § 216(b).

63.     Plaintiff shares the same interests as the putative conditional class and will be entitled to unpaid overtime compensation, interest, attorneys' fees and costs owed under the FLSA.

## CLASS ACTION ALLEGATIONS

64.     Plaintiff brings the action pursuant to Federal Rule of Civil Procedure 23(b)(3) and (c)(4) on behalf of a putative Class defined to include:

> All current and former courier drivers, or other job titles performing similar job duties, of Orange County Courier & Logistics, LLLP ("OCCL") and Subcontracting Concepts, LLC ("SCI"), who signed an "Owner/Operator Agreement" and provided courier services to OCCL and SCI's clients at any time in the last three years and were not paid overtime premiums for hours worked over 40 per workweek and/or hours worked over 8 per workday.

Plaintiff reserves the right to amend the putative class definition as necessary.

65.     Plaintiff shares the same interests as the putative Class and will be entitled under California state law to unpaid overtime compensation, attorneys' fees, and costs and lost interest owed to them under nearly identical factual and legal standards as the remainder of the putative class.

66.     *Numerosity:*  The members of the California Class are so numerous that joinder of all members in the case would be impracticable, and the disposition of their claims as a Class will benefit the parties and the Court.  The precise number of Class members should be readily available from a review of Defendants' personnel and payroll records.

67.     *Commonality/Predominance:*     There is a well-defined community of interest among California Class members and common questions of *both* law and fact predominate in the action over any questions affecting individual members.   These common legal and factual questions include, but are not limited to, the following:

> a. Whether Defendants maintained common policies or practices that required their employees to perform transportation services;
>
> b. The control Defendants exercised over the day-to-day activities of the courier drivers;

c. The manner Defendants used to determine the courier drivers were, in fact, independent contractors;

d. Whether California state law requires Defendants to pay overtime wages to Plaintiffs and the putative class members who worked in excess of 8 hours in any one workday and/or 40 hours in any one workweek;

e. Whether California state law requires Defendants provide meal periods to its delivery dreivers;

f. Whether California state law requires Defendants to reimburse its courier drivers for their mileage expenses;

g. Whether California state law requires Defendants to furnish accurate wage statements to its courier drivers;

h. Whether Defendant's violations of the California Acts were willful; and

i. Whether Defendant should be required to pay compensatory damages, attorneys' fees, and costs and interest for violating California state law.

68. *Typicality:* Plaintiff's claims are typical of those of the California Class in that Plaintiff and all other members suffered damages as a direct and proximate result of Defendants' common and systemic payroll policies and practices. Plaintiff's claims arise from the same policies, practices, and course of conduct of Defendants as all other California Class members' claims and Plaintiff's legal theories are based on the same legal theories as all other California Class members, including, but not limited to: whether Defendants, through their employment policies and practices, exercised control over the manner in which the Class worked; whether Defendants' courier drivers are improperly classified as independent contractors; and whether Defendant failed to compensate all Class members at the premium overtime rate for hours worked in excess of 8 hours in any one workday and/or 40 hours in any one workweek.

69. *Adequacy:* Plaintiff will fully and adequately protect the interests of the California Class and Plaintiff retained national counsel who are qualified and experienced in the prosecution of nationwide wage-and-hour class actions. Neither Plaintiff nor his counsel have interests that are contrary to, or conflicting with, the interests of the California Class.

70. *Superiority:* A class action is superior to other available methods for the fair and efficient adjudication of the controversy, because, *inter alia*, it is economically infeasible for California Class members to prosecute individual actions of their own given the relatively small amount of damages at stake for each individual along with the fear of reprisal by their employer.

71. The case will be manageable as a class action. Plaintiff and his counsel know of no unusual difficulties in the case and Defendants have payroll systems that will allow the class, wage, and damages issues in the case to be resolved with relative ease. Because the elements of Rule 23(b)(3), or in the alternative (c)(4), are satisfied in the case, class certification is appropriate. *Shady Grove Orthopedic Assoc., P.A. v. Allstate Ins. Co.*, 559 U.S. 393, 398 (2010) ("[b]y its terms [Rule 23] creates a categorical rule entitling a plaintiff whose suit meets the specified criteria to pursue her claim as a class action").

## COUNT I

## VIOLATION OF THE FAIR LABOR STANDARDS ACT, 29 U.S.C. § 201, *et seq*. FAILURE TO PAY OVERTIME WAGES

72. Plaintiff re-alleges and incorporates all previous paragraphs herein.

73. At all times relevant to this action, OCCL was an "employer" under the FLSA, 29 U.S.C. § 203(d), subject to the provisions of 29 U.S.C. §§ 201, *et seq*.

74. At all times relevant to this action, SCI was an "employer" under the FLSA, 29 U.S.C. § 203(d), subject to the provisions of 29 U.S.C. §§ 201, *et seq*.

75. Defendants are engaged in interstate commerce or in the production of goods for commerce, as defined by the FLSA.

76. At all relevant times, OCCL and SCI were members of, and engaged in, a joint venture, partnership, and common enterprise, and were acting within the course and scope of, and in pursuance of said joint venture, partnership or common enterprise in employing Plaintiff and other similarly situated current and/or former courier drivers.

77. At all times relevant to this action, Plaintiff was an "employee" of

Defendants within the meaning of the FLSA, 29 U.S.C. § 203(e)(1).

78. Plaintiff either (1) engaged in commerce; or (2) engaged in the production of goods for commerce; or (3) employed in an enterprise engaged in commerce or in the production of goods for commerce.

79. The position of courier driver is not exempt from the FLSA.

80. Defendants' other job titles performing similar job duties are not exempt from the FLSA.

81. At all times relevant to this action, Defendants "suffered or permitted" Plaintiff to work and thus "employed" him within the meaning of the FLSA, 29 U.S.C. § 203(g).

82. The FLSA requires an employer to pay employees the federally mandated overtime premium rate of one and a half times their regular rate of pay for every hour worked in excess of forty (40) hours per workweek. 29 U.S.C. § 207.

83. Defendants violated the FLSA by failing to pay Plaintiff the federally mandated overtime premium for all hours worked in excess of forty (40) hours per workweek.

84. Upon information and belief, Defendants have corporate policies of evading overtime pay for its courier drivers.

85. Defendants' violations of the FLSA were knowing and willful.

86. By failing to compensate its courier drivers at a rate not less than one and one-half times their regular rate of pay for work performed in excess of 40 hours in a workweek, Defendants have violated the FLSA, 29 U.S.C. § 201, *et seq*., including 29 U.S.C. §§ 207(a)(1) and 215(a). All similarly situated courier drivers are victims of a uniform and company-wide enterprise which operates to compensate courier drivers at a rate less than the federally mandated overtime wage rate. This uniform policy, in violation of the FLSA, has been, and continues to be, applied to all courier drivers who have worked or are working for Defendants in the same or similar position as Plaintiff.

87.     None of the provisions of the FLSA can be contravened, set aside, abrogated, or waived by Plaintiff or the Class.

88.     The FLSA, 29 U.S.C. § 216(b), provides that as a remedy for a violation of the Act, an employee is entitled to his or her unpaid overtime wages plus an additional equal amount in liquidated damages, costs, and reasonable attorneys' fees.

## COUNT II

## VIOLATION OF THE CALIFORNIA LABOR CODE §§ 510, 1194, and IWC WAGE ORDER NO. 9 - FAILURE TO PAY OVERTIME

89.     Plaintiff re-alleges and incorporate all previous paragraphs herein.

90.     At all times relevant to this action, OCCL was an "employer" under the California Labor Code § 1194 as set forth in IWC Wage Order 9 § 2(G).

91.     At all times relevant to this action, SCI was an "employer" under the California Labor Code § 1194 as set forth in IWC Wage Order 9 § 2(G).

92.     At all relevant times, OCCL and SCI were members of, and engaged in, a joint venture, partnership, and common enterprise, and were acting within the course and scope of, and in pursuance of said joint venture, partnership or common enterprise in employing Plaintiff and other similarly situated current and/or former courier drivers.

93.     At all times relevant to this action, Plaintiff was an "employee" of Defendants within the meaning of the California Labor Code § 1194 as set forth in IWC Wage Order 9 § 2(F).

94.     At relevant times, in addition to the FLSA, Defendants were required to compensate Plaintiff and all Class members at one and one-half times the regular rate of pay for all hours worked in excess of 8 hours per day and/or 40 hours per week. *See* the California Labor Code § 510(a).

95.     At all relevant times, Defendants suffered, permitted, and/or required Plaintiff and all Class members to work in excess of 8 hours per day and/or 40 hours per week without being paid overtime pay as required by California law.

96.     As a result of the unlawful acts of Defendants, Plaintiffs and all Class members were deprived of their rightfully earned overtime pay in amounts to be determined at trial.

97.     IWC Wage Order 9 regulates the wages, hours and working conditions in the transportation industry.

98.     IWC Wage Order 9 applies to all persons employed in the transportation industry whether paid on a time, piece rate, commission, or other basis.

99.     Defendants' conduct violated California Labor Code §§ 510, 1194, and IWC Wage Order No. 9.  Therefore, pursuant to California Labor Code § 1194, Plaintiff and all putative class members are entitled to recover damages for the nonpayment of overtime pay for all hours worked in excess of 8 hours per day or 40 hours per week, interest on that amount pursuant to California Labor Code § 218.6, plus reasonable attorneys' fees and litigation costs.

100.    None of the provisions of the California Labor Code can be contravened, set aside, abrogated, or waived by Plaintiff or the Class.

101.    As a result of the foregoing conduct, Plaintiff seeks on behalf of himself and all members of the Class unpaid overtime wages at the required legal rate for all of their working hours during the relevant time period; all other damages; attorneys' fees and costs; restitution; penalties; injunctive relief; interest calculated at the highest legal rate; and all other relief allowed by law, including applicable attorneys' fees and costs.

## COUNT III

## VIOLATION OF THE CALIFORNIA LABOR CODE § 226.8

## WILLFUL MISCLASSIFICATION OF INDIVIDUALS

## AS INDEPENDENT CONTRACTORS

102.    Plaintiff re-alleges and incorporates all previous paragraphs herein.

103.    The California Labor Code, Section 226.8, prohibits the willful classification of individuals as independent contractors.

104. The employment relationship between Defendants and the courier drivers is described in the General Allegations above.

105. As a result of the Defendants foregoing conduct, Plaintiff seek a declaration from the Court that Defendants have willfully misclassified Plaintiff and the Class as independent contractors.

## COUNT IV

## VIOLATION OF THE CALIFORNIA LABOR CODE §§ 226.7, 512, and IWC WAGE ORDER NO. 9 – FAILURE TO PROVIDE MEAL PERIODS

106. Plaintiff re-alleges and incorporates all previous paragraphs herein.

107. Plaintiff and similarly situated courier drivers have regularly worked in excess of five (5) hours a day without being afforded at least a half-hour meal period in which they were relieved of all duties, as required by Cal. Labor Code §§ 226.7 and 512, and IWC Wage Order No.9, § 11(A).

108. Because Defendants failed to afford proper and timely meal periods, it is liable to Plaintiff and similarly situated courier drivers for one hour of additional pay at the regular rate of compensation for each workday that the proper meal periods were not provided, pursuant to Cal. Labor Code § 226.7(b) and IWC Wage Order No.9, § 11(B).

109. By violating Cal Labor Code §§ 226.7 and 512, and IWC Wage Order No.9, § 11, Defendants are also liable for penalties, reasonable attorneys' fees, and costs under Cal. Labor Code §§ 218.5 and 1194.

110. Plaintiff, on behalf of himself and similarly situated courier drivers, request relief as described below.

## COUNT V

## VIOLATION OF THE CALIFORNIA LABOR CODE § 2802
## FAILURE TO PROVIDE NECESSARY EXPENDITURE REIMBURSEMENT

111. Plaintiff re-alleges and incorporates all previous paragraphs herein.

112. While acting on the direct instruction of Defendants and discharging their duties for them, Plaintiff and similarly situated courier drivers have incurred work-

related expenses. Such expenses include, but are not limited to, the costs of purchase or lease of vehicles; mileage and fuel, maintenance, and other vehicle operating costs; various forms of insurance; communications equipment; electronic messaging service; cellular telephones; uniforms and laundry services; and tote bags and dry ice.

113. Plaintiffs and class members necessarily incurred these expenses and losses as a direct result of performing their job duties for Defendants.

114. Defendants failed to indemnify or in any manner reimburse Plaintiffs and similarly situated courier drivers for these expenditures and losses. By misclassifying courier drivers as "independent contractors," and further by requiring those employees to pay expenses and cover losses that they incurred in direct consequence of the discharge of their duties for Defendants and/or in obedience to Defendants' direction, Defendants violated and continues to violate Cal. Labor Code § 2802.

115. As a direct and proximate result of Defendants' conduct, Plaintiff and similarly situated courier drivers have suffered losses according to proof, as well as pre-judgment interest, costs, and attorney's fees for the prosecution of this action.

116. Plaintiff, on behalf of himself and similarly situated courier drivers, request relief as described below.

## COUNT VI

## VIOLATION OF THE CALIFORNIA LABOR CODE §§ 226, 226.3, IWC WAGE ORDER NO. 9 – FAILURE TO FURNISH ACCURATE WAGE STATEMENTS

117. Plaintiff re-alleges and incorporates all previous paragraphs herein.

118. Cal. Labor Code § 226(a) and IWC Wage Order 9, § 7(B) require employers semi-monthly or at the time of each payment of wages to furnish each employee with a statement itemizing, among other things, the total hours worked by the employee. Cal. Labor Code § 226(b) provides that if an employer knowingly and intentionally fails to provide a statement itemizing, among other things, the total hours worked by the employee, then the employee is entitled to recover the greater of all actual

damages or fifty dollars ($50) for the initial violation and one hundred dollars ($100) for each subsequent violation, up to four thousand dollars ($4,000).

119.   Defendants knowingly and intentionally failed to furnish Plaintiff and similarly situated courier drivers with timely, itemized statements showing the total hours worked, as required by Cal. Labor Code § 226(a) and IWC Wage Order No. 9.  As a result, Defendants are liable to Plaintiff and similarly situated courier drivers for the amounts provided by Cal. Labor Code § 226(b) and for penalties, and attorneys' fees.

120.   Plaintiff, on behalf of himself and similarly situated courier drivers, request relief as described below.

## COUNT VII

## VIOLATION OF BUS. & PROF. CODE § 17200, *et seq.*

121.   Plaintiff re-alleges and incorporates all previous paragraphs herein.

122.   Plaintiff brings this action individually, on behalf of the Class, and on behalf of the general public pursuant to § 17200 *et seq.* of the California Business and Professions Code (the "Cal. Bus. & Prof. Code"), and the Unfair Competition Act (the "UCL").

123.   California Business and Professions Code §17200 defines unfair competition, as "any unlawful, unfair or fraudulent business act or practice."  Pursuant to California Business and Professions Code §17204, on behalf of the Class, Plaintiff seeks compensation for the loss of their property and the personal financial impacts they have suffered as a result of Defendants' unfair business practices.

124.   Defendants' conduct, as described above, has been and continues to be deleterious to the Class and Plaintiff is seeking to enforce important rights affecting the public interest within the meaning of California Code of Civil Procedure § 1021.5.

125.   The conduct of Defendants, as described above, constituted unlawful, unfair, unconscionable, and/or fraudulent business acts or practices which injured the Class members and caused them loss of money.

126.     The unlawful, unfair, unconscionable, and/or fraudulent business acts or practices adopted by Defendants, which injured the Class members and caused them loss of money, were conducted by Defendants in material part in the state of California and emanated to their business operations throughout California.  Class members, therefore, were harmed and injured as a result of Defendants' conduct in California.  As such, the UCL applies to the entire classes' claims.

127.     Defendants adopted unlawful business and employment policies, entered into agreements and conspired amongst themselves to engage in the above-described unlawful, unfair, unconscionable, and/or fraudulent business acts and practices, and that conduct harmed class members and caused them injury and financial loss.  As such, the UCL applies to all such transactions and dealings.  All members of the Class have standing to assert UCL claims against Defendants.

128.     Defendants have engaged and continues to engage in unfair and unlawful business practices in California by practicing, employing, and utilizing the employment practices outlined above, inclusive, to wit, by: (a) failing to pay to Plaintiff and the Class overtime compensation pursuant to California Labor Code §§ 510 and 1194; (b) willfully misclassifying Plaintiff and the Class as independent contractors, as opposed to employees, in violation of California Labor Code § 226.8; and (C) failing to pay to Plaintiff and the Class overtime compensation pursuant to the FLSA.

129.     By failing to pay its Plaintiff and the Class overtime in violation of FLSA and the California Labor Code, Defendants violated the UCL.

130.     Violations of the FLSA are unlawful acts which are independently actionable under the UCL.  *Wang v. Chinese Daily News* (9th Cir. 08-56740 9/27/10); *In re Wells Fargo Home Mortgage Litig.*, 527 F. Supp. 2d 1053, 1066-69 (N.D. Cal. 2007). Such cases are certifiable as class actions under Fed. R. Civ. P. 23 where the unlawful, unfair, unconscionable, and/or fraudulent business acts or practices, which injured the Class, were conducted by Defendants in material part in the state of California, and emanated to their business operations in other states.  *Id.*

131.   By misclassifying its courier drivers as independent contractors in violation of FLSA and/or any other state or federal law or regulation, as described above, Defendants engaged in unlawful, unfair, unconscionable, and/or fraudulent business acts or practices in violation of the UCL.

132.   By attempting to have Class members waive, abridge, or limit their rights under the FLSA and/or other applicable wage and hour laws in order to work as courier drivers, Defendants engaged in unlawful, unfair, unconscionable, and/or fraudulent business acts or practices in violation of the UCL.

133.   By failing to maintain employment records under the FLSA and/or other applicable wage and hour laws, Defendants engaged in unlawful, unfair, unconscionable, and/or fraudulent business acts or practices in violation of the UCL.

134.   The acts complained of herein, and each of them, constitute unfair, unlawful, unconscionable, and/or fraudulent business practices in violation of Cal. Bus. & Prof. Code § 17200 *et seq.*  Defendants' acts and practices described herein offend established public policies, including, but not limited to those set forth in the FLSA and/or other applicable wage and hour laws, and involve business practices that are immoral, unethical, oppressive, and/or unscrupulous.

135.   The unfair business practices set forth above have and continue to injure the Class and the general public and cause injury and the loss of money, as described further within.  These violations have unjustly enriched the Defendants at the expense of the Class.  As a result, Plaintiff, the Class, and the general public are entitled to restitution and an injunction.

136.   Plaintiff seeks, on his own behalf, on behalf of other members of the Class similarly situated, and on behalf of the general public, full restitution of monies, as necessary and according to proof, to restore any and all monies withheld, acquired and/or converted by the Defendants by means of the unfair practices complained of herein.

137. The acts complained of herein occurred at least within the last three years preceding the filing of the complaint in this action.

138. Plaintiff is informed and believe and on that basis allege that at all times herein mentioned Defendants have engaged in unlawful, deceptive and unfair business practices, as proscribed by California Business and Professions Code § 17200 *et seq*., including those set forth herein above thereby depriving Plaintiff and other members of the general public the minimum working condition standards and conditions due to them under the California laws and Industrial Welfare Commission wage orders as specifically described therein.

139. The conduct of Defendants and their agents, employees, managerial employees as described herein was oppressive, fraudulent, malicious, and done in conscious disregard of Plaintiff's and Class members' rights.

140. Such a pattern, practice, and uniform administration of corporate policy regarding illegal employee compensation as described herein is unlawful and creates an entitlement to recovery by Plaintiff in a civil action for the unpaid balance of the full amount of wages owing, including interest thereon, penalties, attorneys' fees, and costs of suit according to the mandate of California Labor Code.

141. Such a pattern, practice, and uniform administration of an unlawful, deceptive, and unfair business practice as described herein creates an entitlement to recovery by Plaintiff and the Class in a civil action for damages and wages owed.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff requests the following relief:

    A. Certifying this case as a collective action in accordance with 29 U.S.C. § 216(b) with respect to the FLSA claims set forth above;

    B. Certifying the California State Law Class pursuant to Rule 23 of the Federal Rules of Civil Procedure;

    C. Ordering Defendants to disclose in computer format, or in print if no computer readable format is available, the names, addresses, email

addresses and phone numbers of all those individuals who are similarly situated, and permitting Plaintiff's attorneys to send notice of this action to all those similarly situated individuals including the publishing of notice in a manner that is reasonably calculated to apprise the potential class members of their rights under this litigation;

D. Designating the Named-Plaintiff to act as the Class Representatives on behalf of all similarly situated individuals for both the FLSA and California State Law Classes;

E. Declaring that Defendants willfully violated the FLSA and its attendant regulations as set forth above;

F. Declaring that Defendants violated their obligations under the FLSA;

G. Granting judgment in favor of Plaintiff and against Defendant and awarding the amount of unpaid overtime pay calculated at the rate of one and one-half (1.5) of Plaintiff's regular rates multiplied by all hours that Plaintiff worked in excess of 40 hours per week for the past three years for the FLSA Class;

H. Granting judgment in favor of Plaintiff and against Defendant and awarding the amount of unpaid overtime pay calculated at the rate of one and one-half (1.5) of Plaintiff's regular rates multiplied by all hours that Plaintiff worked in excess of 40 hours per week and/or 8 hours per day for the past four years for the California Class;

I. Awarding liquidated damages to Plaintiff, in an amount equal to the amount of unpaid overtime found owing to Plaintiff;

J. Awarding appropriate restitution in an amount to be proven at trial for Defendant's violation of Section 17200 of the UCL;

K. Awarding actual and statutory damages for Defendant's violations of the California Labor Code;

L. Awarding reasonable attorney fees and costs incurred by Plaintiff in

1    filing this action;

2         M. Awarding pre- and post-judgment interest to Plaintiff on these damages;

3         and

4         N. Such further relief as this court deems appropriate.

5                                    **<u>JURY DEMAND</u>**

6         NOW COMES Plaintiff, by and through his Attorneys, and hereby demand a trial

7    by jury pursuant to Rule 38 of the Federal Rules of Civil Procedure and the court rules

8    and statutes made and provided with respect to the above entitled cause.

9                                    Respectfully Submitted,

10                                   ZIMMERMAN REED, LLP

11   Dated: April 11, 2017          By:    /s/ Christopher P. Ridout
                                           Christopher P. Ridout
12                                         Hannah P. Belknap
                                           2381 Rosecrans Ave., Suite 328
13                                         Manhattan Beach, CA 90245
                                           Tel: (877) 500-8780
14                                         Fax: (877) 500-8781
                                           Christopher.ridout@zimmreed.com
15                                         Hannah.belknap@zimmreed.com

16                                         *Local Counsel for Plaintiff*

17                                         *Pro Hac Vice Anticipated:*

18                                         Jacob R. Rusch (MN Bar No. 391892)
                                           David H. Grounds (MN Bar No. 0285742)
19                                         Molly E. Nephew (MN Bar No. 0397607)
                                           **JOHNSON BECKER, PLLC**
20                                         444 Cedar Street, Suite 1800
                                           Minneapolis, Minnesota 55402
21                                         Tel: (612) 436-1800
                                           Fax: (612) 436-1801
22                                         jrusch@johnsonbecker.com
                                           dgrounds@johnsonbecker.com
23                                         mnephew@johnsonbecker.com

24                                         *Trial Counsel for Plaintiff*

25

26

27

28